Anderson, Clayton & Co., Transferee v. Commissioner.
Anderson, Clayton & Co. v. Commissioner
Docket No. 15255.
United States Tax Court
1948 Tax Ct. Memo LEXIS 115; 7 T.C.M. (CCH) 573; T.C.M. (RIA) 48162; August 18, 1948
*115 John C. White, Esq., Transportation Building, Washington, D.C., for the petitioner. Allen T. Akin, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner notified the petitioner that it was liable as a transferee of Memphis Cotton Oil Co., Inc. for deficiencies determined against that taxpayer and interest thereon. The deficiencies determined against Memphis Cotton Oil Co., Inc. were as follows: Fiscal Year
Excess
Ended
Income Tax
Profits Tax
May 31, 1943
$2,653.77
$3,435.25
May 31, 1944
3,368.22 The petitioner admits its liability as a transferee if any tax is due from the taxpayer. The only issue for decision is whether Memphis Cotton Oil Co., Inc. sustained a deductible loss for the period June 1, 1944 to July 31, 1944, from the sale of assets to West Texas Cottonoil Co. The parties seem to recognize that if such a loss is deductible, then it will affect the tax liability for the taxable years through the carry-back provisions. Findings of Fact The petitioner is a corporation which owned all of the stock of Memphis Cotton Oil Co., Inc. (hereinafter called Memphis) from September 8, 1943 until *116 the dissolution of Memphis on July 31, 1944. The petitioner owned 89.5 per cent of the common stock of West Texas Cottonoil Co. (hereafter called West Texas) at all times material hereto. Memphis owned the site of a cotton oil mill, the mill having recently burned, certain buildings used in connection with the mill, and 23 cotton gins located in or near Memphis, Texas. The petitioner acquired the stock of Memphis for the purpose of operating its properties which covered an area in which West Texas did not operate. It discovered that it could not rebuild the burned mill and it would need additional personnel and new management to operate the gins acquired. The alternative was to sell them to a company that could operate them. West Texas had been buying all of the seed produced from those gins and desired to acquire them, believing that it could operate them more efficiently and obtain the seed at lower cost to it. It had the personnel and management necessary to operate those properties efficiently. The book value of the Memphis Properties described above was $298,169.83. Memphis sold those assets to West Texas on July 31, 1944 for $298,169.83. It was discovered later that the *117 basis to Memphis for gain or loss on the assets sold to West Texas was $336,204.34 instead of the book value as shown on the books of Memphis. The Commissioner, in determining the deficiencies for the fiscal year ended May 31, 1943, allowed only $20,218.53 as a net loss carry-back from the taxable year June 1, 1944 to July 31, 1944, and explained one of his adjustments for that short period as follows: "It is held that the amount of $29,066.67 claimed as a loss by the Memphis Cotton Oil Co. Incorporated for the period June 1, 1944 to July 31, 1944, from the sale of assets to the West Texas Cottonoil Company as of July 31, 1944, does not represent an allowable deduction to the Memphis Cotton Oil Co. Incorporated." A number of the officers and directors of the petitioner, Memphis, and West Texas were the same persons. The president of West Texas was authorized on July 13, 1944 to borrow money from the petitioner, including an amount sufficient to purchase the assets of Memphis. Memphis was dissolved on July 31, 1944, at which time the petitioner, its sole stockholder, received cash and other assets from Memphis in the amount of $680,746.61. That amount exceeded the cost of the *118 Memphis stock to the petitioner by $10,746.61 and that difference was reported by the petitioner as a capital gain. The fair market value on July 31, 1944 of the assets sold by Memphis to West Texas was not in excess of $298,169.83. The sale of assets made by Memphis to West Texas, described above, was a bona fide transaction. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The respondent relies upon the fact that the petitioner owned all of the stock of Memphis and 89.5 per cent of the stock of West Texas and argues that the loss to Memphis on the sale to West Texas is not an allowable deduction because the transaction had no business purpose, merely transferred assets from one operating unit of the petitioner to another, and was a sham. He cites ; ; and , affirmed . The respondent does not argue that the price paid by West Texas to Memphis was less than the fair market value of the assets transferred, and the evidence shows that the price paid *119 by West Texas was at least equal to the fair market value of the property acquired. There is no evidence to indicate that the sale was made for the purpose of saving taxes but, on the contrary, there is evidence to show that the parties were not aware that any deduction for tax purposes would result from the sale. There was a real business purpose for the transfer. The petitioner, after purchasing the stock of Memphis, discovered that the mill, which had burned, could not be rebuilt. Most of the 23 cotton gins were old and the petitioner realized that it would have to find additional personnel and new management to operate them. West Texas was an operating company and had the personnel and management necessary to take over and operate the gins of Memphis. West Texas had not operated in the Memphis area but had purchased seeds from the Memphis gins at the prevailing market prices. It believed that if it could acquire the gins and operate them, it could benefit financially from the change. The affairs of the three companies were kept separate despite the fact that they were closely related through stock ownership and in some instances their officers and directors were the same men. The *120 proposal for the transfer of the Memphis assets to West Texas came from the manager of West Texas. The record shows that there is no sound reason for disallowing the loss which Memphis actually sustained in selling the assets to West Texas. Decision will be entered under Rule 50.